CLARK vs. STACKHOUSE.

THIS suit was brought to recover the amount of a check of the defendant, which had been refused at the bank.

THE check was made payable *to H. M. & Co's. note, or bearer*, and the defendant's clerk proved that a check of that amount, which he believed to be the one presented to him, was drawn by the defendant, and delivered to him to go with a Mr. *Hoyle*, of the house of Hoyle, Miles & Co. to the bank, and take up a note of theirs endorsed by the defendant—that, arriving too late at the bank, they were told the note had been sent to the notary to be protested, that the bank hours being over, and the check being before the witness, *Hoyle* took it up, and said he would go and take up the note therewith.

*Hoyle* next deposed, that he gave the check to the plaintiff, on the Monday following, towards

---

*Margin notes:*

FALL 1812.
I. District.

TREMOULET
*vs.*
TITTER-MARY.

Check, received from a person who obtained it unfairly, will entitle the party to recover on it, if he took it without any knowledge.

FALL 1812.
I. District.

CLARK
*vs.*
STACKHOUSE

noon, to indemnify him for his endorsement of a note of his house, which the plaintiff had endorsed and was protested on the preceding Saturday—informing him the house had failed, and expressing a hope that the check might prove good.

*Hennen* and *Ellery*, for defendant. The only question in this case, is, whether the defendant or plaintiff is to be the loser of the sum of money specified in the check. To determine this question, we must enquire:

1. WHETHER the person from whom the plaintiff received it, would be entitled to recover in this suit?

2. WHETHER the plaintiff be in a better situation than the person from whom he received it?

1. ON the first point, there can be but little ground for fair doubt. *Hoyle,* from whom the plaintiff received it, could never recover against the defendant, as he knew it was never intended to be paid to him or his firm, or to be put into circulation, but to take up their note, due on the day of the date of the check, and upon which the defendant stood as an indorser, and also as it was never intended to be delivered to him, but was surreptitiously obtained, or at least unfairly circulated.

2. AND is the present plaintiff in a better situa-
tion? Has he not received this check, subject to
all the equity arising between the original parties?

This will appear, or be strongly inferred,

1. BECAUSE it was received by him some
days after it was due.

2. BECAUSE a knowledge of the circumstances
under which it was drawn and circulated,
can be fairly and legally imputed to him.

1. It is a settled principle of law, that whoever
receives a bill or note after it is due, takes it upon
the title of the person from whom he received it,
and places himself in the same situation, and be-
comes subject to the same equity. *Evans*, 107.
And the mere act of receiving it, when overdue,
is sufficient, legally to infer a knowledge of all the
circumstances attending it, and the person so re-
ceiving it, shall be taken as having notice of all, the
person from whom he received it knew. *Good* vs.
*Coe.* This principle has been extended to bank-
er's checks, which, like bank checks, are made
payable to bearer. 7 *T. R.* 430, and it has been
equally determined, that a banker's check is due
on the day of its date, and should be then presen-
ted for payment, if the parties reside in the same
place. *Evans*, 140. In the present case, the check
was nearly three days old; and in what important

R R

FALL 1812.
I. District.

CLARK
*vs.*
STACKHOUSE

features does a bank check so differ from a banker's check, as to exempt it from the operation and application of the same law? Had the bank failed, would not the retention of this check been construed such a *laches,* as to have exempted the drawer, and thrown the loss exclusively upon the negligent holder. A check must be presented for payment on the *very day* it is received. *Max. Dict.* 61. *Chitty,* 147, *Kyd.* 45, 1 *Bl. Rep.* 168. At all adventures within *twenty-four hours,* (the parties residing in the same place) after such receipt. *Max. Dict.* 62, *Str.* 415, 910, 1175, 1248. *Ld. Ray.* 928.

2. Have we not a right, both from the face of the check, as well as the circumstances of the case, strongly to infer and impute, a notice and knowledge on the part of the plaintiff, when he received it? There is, first, the post date, which alone would throw a shade of suspicion upon the check; then, its being drawn by the defendant, and made payable to *H. M. and Co's note,* and expressing the exact sum for which, but two days before, the plaintiff endorsed their note, for the avowed purpose of taking up and renewing the one then due and endorsed by defendant, explained beyond contradiction, for what purpose it was drawn, and to what use intended. These facts thus appearing on the face of the check, uncoupled with any other

circumstances, would naturally, not only infuse doubt, but prompt enquiry and produce examination. But when we connect with them the other circumstances in this case, the conviction is irresistible, that the plaintiff was connusant of every material fact, and by taking it with such knowledge, placed himself in the situation of the person from whom he received it, and made himself liable to all the objections which would be admitted against him. He is told by the witness, *Hoyle*, at the time the check was offered to him in payment, that this very note, endorsed by defendant, and due on the day of date of the check, and for which this very check was given, had been dishonored; of course, the plaintiff knew, and from the best authority, that their firm, of which *Hoyle* was one, was actually, as well as legally, insolvent. He was also told, at the same time, that this was the only fund left, out of which he could be paid, and by *expressing* a *wish* that the check might be good, a *fear* was equally *implied* that it might *not* be good.

On the part of the defendant, every step was taken, to free himself from loss, risk, or difficulty on account of this check. He did not give this check to *Hoyle*, but confided it to his own clerk; and though the words *or bearer*, were not effaced, yet he made it payable to *H. M. & Co's note*, and when he found it had been obtained from

Fall  1812. his clerk, he directed the payment of it in bank to
I. District.  be stopped.

CLARK
*vs.*      *Porter* and *Depeyster*, for the plaintiff.  What-
STACKHOUSE ever degree of industry the defendant may have
exercised, in preventing the misapplication of the
check, if he was unsuccessful in conveying to the
plaintiff a knowledge of the circumstance under
which he parted with it, he cannot resist the pay-
ment of it.

ADMITTING that the plaintiff knew that the
check had been given to *Hoyle*, for the purpose of
taking up the note which the defendant had indor-
sed, still, as the check was made payable *to the
bearer*, the possession was *prima facie* evidence
of an authority to pass it away.   He might have
given the check as a means of payment, which
*Hoyle*, if he had any other, might fairly have ap-
plied to any use he pleased.   Fraud is not to be
lightly presumed.

NOTHING can be more peculiarly negociable,
than a draft or bill payable *to bearer;* which is
from its nature payable from hand, *toties quoties,
per Yates, J.* in *Grant* vs. *Vaughan, 3 Burr,*
1529.   Such a draft is like a bank note. *Id.* 1530.

CHECKS are considered as cash—they are the
great medium of commercial intercourse in Eu-
rope. *Swift on bills.* 337.

THE defendant might, with equal propriety, complain that *Hoyle* had paid away cash in bank notes, which he might have given him to take the note he had endorsed for him.

As to the check being overdue. It was given, we have in evidence, on Saturday, about the close of the bank-day—the next was a Sunday, *dies non*, and the morning of the following day, it was received by the plaintiff, within one or two hours after the opening of the bank. If it had been on a private banker, and he had failed before the plaintiff could present it, the defendant would have been discharged : for the keeping it that length of time without presenting it, would not have been such a delay as would have been detrimental to the holder. In *Ward* vs. *Evans*, 2 *Salk*. 442, the court held that the party who had delayed presenting a gold-smith's note till the *next day* after he received it, was in time, as he should have a reasonable time to receive it, and he was not bound, as soon as he got it, to go straight for his money.

IN some cases, keeping a check *three, four*, or *five* days, was held to be not too long. 2 *Free.* 247, 257. In another case, it was held that presentment for payment must be made within *two* days. *Str.* 508. The decisions have varied on this subject, but the fair result of them is, that a banker's check, payable in the place where it was given, may be presented at any time before twelve

FALL 1812. o'clock on the day *after* the receipt of it, or at any
I. District. time within twenty-four hours after such receipt.

CLARK *Str.* 415, 416, 910, 1175, 1248. *Ld. Raym.* 928.
*vs.* *Holt,* 120, *Kyd.* 45.
STACKHOUSE

Now if the check in the present case, when it came to the plaintiff's hands, was not detained long enough to have dissolved the liability of the maker, it was not *overdue*—not stale enough to be denied circulation on ordinary terms. No presumption, therefore, arises against the plaintiffs on that score.

*By the Court.* It is clear that *Hoyle* could not maintain an action, against the defendant, on this check :

1. BECAUSE the check was not *given* to him by the drawer, or any person apparently authorised to pass it away.

2. BECAUSE, in his knowledge, the check was not drawn, in order *to be paid,* but for the special purpose of taking up a note.

3. BECAUSE he came by it unfairly, having taken it from the counter, without any authority from a person authorised to pass it away.

BUT a person, who cannot maintain an action upon a paper, may enable another person to sustain one, in certain cases. If the mail be robbed, the thief may not sue on the bank notes he may

have obtained by the robbery ; yet if he pays them
away to a person unacquainted with the unfair
means through which it was obtained, he may
maintain one.   So, although *Hoyle* could not sue
the defendant, he has legally, by the delivery of the
check, enabled the plaintiff to sustain an action, if
he received it without any knowledge of the par-
ticular circumstances under which *Hoyle* had come
by it.

FALL    1812.
I. District.

CLARK
*vs.*
STACKHOUSE

WHEN the day of payment of a note, bill, or
check, is past, its circulation gives rise to a pre-
sumption that it may have been paid, or that the
person bound to pay it, has some reason to resist
the payment of it.   The person, therefore, accept-
ing it, receives it, in some degree, at his risk.   But
in the present case, the check was received by the
plaintiff, very soon indeed after its issue.   If the
Sunday be not reckoned, and it ought not, the
check was not twenty-four hours old.

THE check was payable to *H. M. & Co's note,*
OR BEARER.   The latter words repel the idea that
it was exclusively to be used for the payment of
the note.   It may be fairly inferred that the words,
*H. M. & Co's. note,* were put in, as a memoran-
dum for the drawer.

THE circumstance of the house's failure, of it-
self, does not perhaps afford such a presumption

FALL 1812.
I. District.

CLARK
*vs.*
STACKHOUSE

of an improper application of the check, as would amount to a proof that the plaintiff was acquainted with the manner in which *Hoyle* had obtained the check.

VERDICT FOR PLAINTIFF.